

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 3, 2013**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| R.L. ADKINS CORP., | § | CASE NO. 11-10241-rlj-11 |
| | § | |
| DEBTOR. | § | |

## MEMORANDUM OPINION AND ORDER

The Court considers whether creditors Baker Hughes Oilfield Operations, Inc. ("Baker Hughes") and Gray Wireline Services, Inc. ("Gray Wireline") are entitled to treatment under § 1111(b)(2) of the Bankruptcy Code as having properly made the so-called "1111(b) election." Scott Oils, Inc. ("Scott Oils"), the plan proponent on the chapter 11 plan confirmed in this case [Docket No. 822] ("Plan"), submits that neither Baker Hughes nor Gray Wireline may be treated under § 1111(b)(2) as they are prohibited from making the election by the very terms of § 1111(b).

The Plan was confirmed by the Court's order entered May 13, 2013 [Docket No. 826] ("Confirmation Order"). Under the Plan, Baker Hughes and Gray Wireline are Class 9

creditors—Baker Hughes as subclass 9.1 of the Plan and Gray Wireline as subclass 9.5 of the Plan. The Plan is based in large part on the purchase by Scott Oils of the debtor's mineral and leasehold interests, many of which are subject of lien claims asserted by creditors. Through a complicated "waterfall" formula, creditors are paid their respective secured claims. Baker Hughes and Gray Wireline, as Class 9 claimants, are mechanics lien claimants with asserted liens against certain of the mineral interests subject of the sale. There is no dispute concerning the formula for payment; the dispute concerns whether Baker Hughes and Gray Wireline must be paid the entire amount of their respective claims given their asserted status under § 1111(b)(2) or just an amount based on the value of their respective interests in the properties subject of the sale. The difference is significant. Baker Hughes's total claim amount is $354,921.96; Gray Wireline's total claim amount is $38,017.50. *See* Exhibit B of Confirmed Plan [Docket No. 822-1]. The anticipated value of the properties subject of their liens, however, is $72,168.95 and $13,207.83, respectively. *Id*.

Section 1111(b) of the Bankruptcy Code allows an undersecured creditor to elect to have its claim treated as secured to the extent *its claim* is allowed. 11 U.S.C. § 1111(b)(2). Such creditor may, as a result, demand payment in full of its claim under a chapter 11 plan, § 1129(b)(2)(A)(ii), and in a value that is no less than the present value of the property securing the claim, § 1129(a)(7)(B).

Baker Hughes and Gray Wireline did not object to the Plan, but they did cast ballots rejecting the Plan. As such, they contend the Plan's treatment of their respective claims is not fair and equitable as required by § 1129(b)(2)(A) because it fails to pay the full amount of their claims. Full payment is required because, they contend, they were each in effect denied the right

to credit bid. They state that they "cannot be deprived of both the right to credit bid and the right to make a [section] 1111(b)(2) election," Docket No. 785 at 2–3 (*citing In re Philadelphia Newspapers, LLC*, No. 09–11204SR, 2009 Bankr. LEXIS 3167 (Bankr. E.D. Pa. Oct. 8, 2009), and *In re Waterways Barge P'ship*, 104 B.R. 776, 782 (Bankr. N.D. Miss. 1989)).

Section 1111(b)(1)(B)(ii) is unequivocal. It simply provides that an undersecured creditor cannot make the § 1111(b)(2) election if it "has recourse against the debtor" on its claim and the property subject of its lien "is sold under section 363 of this title or is . . . sold under the plan." 11 U.S.C. § 1111(b)(1)(B)(ii). The mineral estates at issue here are sold under the Plan. The recourse nature of the claims of Baker Hughes and Gray Wireline is undisputed.

The Plan does not state that the Class 9 creditors do not have a right to credit bid. The Plan does state, however, that the sale is made pursuant to § 363 of the Bankruptcy Code. Any such sale carries with it an affected creditor's right to credit bid. *See* 11 U.S.C. § 363(k). Baker Hughes and Gray Wireline apparently never attempted to make a credit bid in response to the sale. Neither objected to the Plan to the extent they construed the Plan to prevent such right. Finally, the Confirmation Order specifically finds that the sale was effected under § 363(k). As a practical matter, such right was unavoidable "unless the court . . . orders otherwise." *See* 11 U.S.C. § 363(k).

Baker Hughes and Gray Wireline construe the Plan's failure to specifically reference their respective rights to make credit bids to somehow validate their § 1111(b) elections and thus require payment of their allowed claims in full. The Court does not so construe the Plan's effect under the circumstances here. Baker Hughes and Gray Wireline did make an election; they

elected not to credit bid. They held such right under § 363 of the Bankruptcy Code, not under § 1111(b) of the Bankruptcy Code. It is, therefore,

ORDERED that the § 1111(b) elections made by Baker Hughes and Gray Wireline are invalid and the objections to such elections by Scott Oils are sustained.

### End of Memorandum Opinion and Order ###